# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

DANNI D. ODGERS,

                Plaintiff,

     v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

Case No. C17-1204 BHS

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS

## I.    BASIC DATA

Type of Benefits Sought:

    ( )    Disability Insurance

    ( X )    Supplemental Security Income

Plaintiff's:

    Sex:  Male

    Age:  31 at the time of alleged disability onset

Principal Disabilities Alleged by Plaintiff: ischemic heart disease; left shoulder impairment; right elbow impairment; obesity; left knee impairment; affective disorder; anxiety disorder; high cholesterol; and hypertension. AR at 18.

Disability Allegedly Began: February 27, 2014

Principal Previous Work Experience: stock clerk, and landscape laborer.

Education Level Achieved by Plaintiff: High School Diploma

## II. PROCEDURAL HISTORY—ADMINISTRATIVE

Before ALJ:

Date of Hearing: August 4, 2015

Date of Decision: January 5, 2016

Appears in Record at: AR 12-36

Summary of Decision:

The claimant has not engaged in substantial gainful activity since February 27, 2014, the application date (20 C.F.R. § 416.971, et seq.);

The claimant has the following severe impairments: ischemic heart disease; left shoulder impairment; right elbow impairment; obesity; left knee impairment; affective disorder; and anxiety disorder (20 C.F.R. § 416.920(c));

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926);

After careful consideration of the entire record, the Administrative Law Judge ("ALJ") found that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b). Except, the claimant could lift/carry ten pounds occasionally and frequently; stand and/or walk (with normal breaks) for about six hours in an eight-hour workday; and sit (with normal breaks) for about six hours in an eight-hour workday. The claimant can frequently climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, and crawl. The claimant is limited to frequent bilateral reaching, handling, fingering, and feeling. The claimant can remember simple instructions involving simple, routine work tasks with customary breaks and lunch. There can be occasional contact with coworkers for tasks, but collaborative efforts should last on the average no longer than ten minutes. There should be no contact with the public for work tasks, but incidental contact with the public is not precluded. There should be no more than occasional changes to the work environment. The claimant is off task up to 10% over the course of an eight-hour workday, but not all at one time.

The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965);

The claimant was born on June 22, 1968 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963);

The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964);

Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. § 416.968);

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)).

The claimant has not been under a disability, as defined in the Social Security Act, since February 27, 2014, the date the application was filed (20 C.F.R. § 416.920(g)).

Before Appeals Council:

Date of Decision: June 15, 2017

Appears in Record at: AR 1-6

Summary of Decision: Denied review

## III.   PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by ( X ) Plaintiff     ( X ) Commissioner

## IV.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than

a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## V. EVALUATING DISABILITY

The claimant, Danni Duwayne Odgers ("Odgers"), bears the burden of proving he is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

## VI.     ISSUES ON APPEAL

Whether the ALJ properly evaluated the opinions of Andrea Marshall, D.O.;

Whether the ALJ properly evaluated the opinions of Kathryn Johnson, Ph.D.;

Whether the ALJ properly evaluated the opinions of Liza Redding;

Whether the ALJ properly evaluated the opinions of David Radomski.

In his opening brief, Odgers also asserts that the ALJ erred in relying on the testimony of vocational expert Michael Swanson, contending that there was an inconsistency between Mr. Swanson's testimony and the Dictionary of Occupational Titles ("DOT"). Op. Br. (Dkt. #9) at 3-4. On reply, Odgers conceded that there was no inconsistency between the vocational expert's testimony and the DOT. The Court thus does not address this issue.

## VII.     DISCUSSION

**A.     The ALJ Did Not Err in His Evaluation of Andrea Marshall, D.O.'s Opinions**

Dr. Marshall performed a physical consultative examination of Odgers on May 24, 2014. AR at 431. Dr. Marshall concluded that Odgers could stand and walk up to six hours; he had no limitations on sitting; he could lift and carry "[l]ess than 10 pounds

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 5

occasionally and frequently" because of right elbow and shoulder pain; he could frequently climb, balance, stoop, kneel, crouch, or crawl; and he could frequently reach, handle, finger, or feel. AR at 435.

The ALJ gave significant weight to Dr. Marshall's opinion. AR at 27. When describing Odgers's limitations, however, the ALJ reported that Odgers could lift and/or carry ten pounds occasionally and frequently, instead of less than ten pounds, as Dr. Marshall opined. *Id.* at 27, 435. Odgers contends that this was error, and that it rendered the vocational expert's testimony invalid because the ALJ's hypothetical questions did not include all of Odgers's limitations. Op. Br. at 2-3. Odgers therefore argues that the ALJ's disability determination is not supported by substantial evidence. *Id.*

An ALJ may rely on testimony from a vocational expert as long as the hypothetical questions posed "contain all of the limitations that the ALJ found credible and supported by substantial evidence in the record." *Bayliss*, 427 F.3d at 1217. "'Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant;'" they have "no evidentiary value if the assumptions in the hypothetical are not supported by the record." *Magallanes*, 881 F.2d at 756 (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). That said, "[t]he limitation of evidence in a hypothetical question is objectionable 'only if the assumed facts could not be supported by the record.'" *Magallanes*, 881 F.2d at 757 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).

The Court finds no error in the ALJ's questioning of the vocational expert. The distinction between a lifting restriction of ten pounds and one of less than ten pounds is a distinction without a difference. *Harris v. Colvin*, No. 1:13-cv-01584 BAM, 2015 WL 925627, at *5-6 (E.D. Cal. March 3, 2015); *see also Smith v. Colvin*, 821 F.3d 1264, 1267 (10th Cir. 2016) (noting that the difference between a lifting restriction of ten pounds and less than ten pounds "involves semantics"). Furthermore, the lifting restriction of ten pounds matched Odgers's testimony, as he testified that he could lift ten pounds without a problem. AR at 59.

Even if the Court were to fault the ALJ here, the error would be harmless. The Court will not reverse on account of error unless the party claiming error establishes "at least a 'substantial likelihood of prejudice.'" *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (quoting *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011)). Odgers cannot meet his burden. Nothing in the record indicates that the vocational expert would have identified different jobs, or found that Odgers could not do the jobs identified, based on a negligible difference in the lifting restriction from ten pounds to less than ten pounds.

**B.     The ALJ Harmfully Erred in His Evaluation of Kathryn Johnson, Ph.D.'s Opinions**

Dr. Johnson evaluated Odgers on May 14, 2014. AR at 425. Based on her evaluation and review of medical records, Dr. Johnson diagnosed Odgers with depression. *Id.* at 729. She opined that he was capable of understanding and following basic directions, but would have mild to moderate difficulty with more complex tasks. *Id.* Dr. Johnson opined that Odgers "may have difficulty maintaining regular attendance

for an entire workweek due to his symptoms including panic attacks." *Id.* She further opined that he "would likely have significant difficulty interacting with others" because he "has a somewhat unsophisticated manner about him," he "does not communicate directly at all times," and he has very poor hygiene. *Id.*

The ALJ gave partial weight to Dr. Johnson's opinion. *Id.* at 27. He agreed that Odgers was limited to basic directions or simple tasks. *Id.* The ALJ disagreed, however, with Dr. Johnson's opinion that Odgers could not maintain regular attendance for a workweek and had significant difficultly interacting with others. *Id.*

In order to reject Dr. Johnson's opinions, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042).

### 1. Dr. Johnson's Opinion on Odgers's Attendance Capabilities

To support his rejection of Dr. Johnson's opinions on Odgers's ability to maintain regular attendance for a workweek, the ALJ argued that "[t]he medical evidence shows minimal mental health findings with [Odgers's] treatment providers, and his symptoms are well managed [sic] with medication." AR at 27. Neither of these reasons were specific nor are they supported by the record. First, the record does not support the ALJ's summary statement that there were minimal mental health findings. William Wilkinson, Ed.D. diagnosed Odgers with depressive disorder and anxiety disorder with some symptoms of panic. *Id.* at 306. Neville Antia, M.D. diagnosed Odgers with depression.

*Id.* at 314. Randy Wong, D.O. diagnosed Odgers with anxiety disorder and panic disorder. *Id.* at 703. The ALJ was not obligated to agree with these opinions, but he could not ignore them or deem them "minimal" without explanation.

Second, the ALJ's statement that Odgers's symptoms are well-managed with medication is similarly unsupported by the record. Odgers reported an increase in anxiety in December 2014, stating that he was suffering panic attacks every other day. *Id.* at 638. He continued to report near-daily panic attacks in late January 2015. *Id.* at 612. His panic attacks continued through April 2015. *Id.* at 564, 572. Nothing in the record indicates that these symptoms are well-managed with medication. The ALJ thus erred in rejecting Dr. Johnson's opinion on Odgers's ability to maintain attendance for a full workweek.

### 2. Dr. Johnson's Opinion on Odgers's Difficulty Interacting With Others

The ALJ also rejected Dr. Johnson's opinions that Odgers had significant difficulty interacting with others because of his unsophisticated manner, lack of direct communication, and poor hygiene. *Id.* at 27-28. The ALJ conceded that Odgers "has some relationship issues" at his housing facility, but noted that he "maintains some friendships." *Id.* at 27. The record provides some support for this contention. *See, e.g.*, *id.* at 414, 466, 481, 487, 671. However, the record does not support the ALJ's next contention, that Odgers had no difficulty interacting with his treatment providers. While Odgers's providers noted that he was likable, or acted "appropriately," *e.g.*, *id.* at 415, they also noted that he could be difficult to communicate with. Nurse Practitioner

Elisabeth Brennand reported that Odgers "jumps from topic to topic frequently." *Id.* at 479. Odgers's mental health counselor, Liza Redding, LICSW, noted that he "doesn't understand my questions and gives rambling replies." *Id.* at 451; *see also id.* at 475, 538, 612, 644.

The record similarly does not support the ALJ's contention that Odgers can maintain appropriate hygiene, but chooses not to. The ALJ admitted that Odgers's "hygiene was an issue at the time of the examination," but suggested that this was because Odgers was homeless at the time. *Id.* at 28. Odgers testified that he was in fact living at the Aloha Inn, a transitional housing facility, at the time of the hearing. *Id.* at 50. The record shows that he moved into the Aloha Inn in September 2014. *See id.* at 684-85. Furthermore, Ms. Redding frequently observed that Odgers was malodorous, a condition that continued through her most recent records in June 2015. *See, e.g.*, *id.* at 533, 612, 614, 638, 671. In July 2015, David Radomski, the case manager at the Aloha Inn, observed that Odgers's "clothes are always filthy and he seems to bathe rarely given the pungent body odor that follows him near constantly." *Id.* at 284. The ALJ did not point to any support for his contention that Odgers chose not to maintain appropriate hygiene, and this was therefore not a specific and legitimate reason supported by substantial evidence for rejecting Dr. Johnson's opinion on Odgers's social interaction capabilities.

Viewing the record as a whole, *see Thomas*, 278 F.3d at 954, the Court finds that the ALJ's reasons for rejecting Dr. Johnson's opinion regarding Odgers's difficultly

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 10

interacting with others are not supported by substantial evidence in the record. At most, the ALJ has shown that Odgers is capable of making friends. But that alone does not refute Dr. Johnson's opinion that Odgers would have significant difficulty interacting with others due to his poor communication and hygiene. The ALJ thus erred in rejecting Dr. Johnson's opinion on Odgers's ability to interact with others.

### 3. Harmful Error

The ALJ's rejection of Dr. Johnson's opinions was harmful error. The Court cannot consider an error harmless unless it can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). The Court is unable to conclude that the ALJ would not have reached a different determination had he adequately evaluated Dr. Johnson's opinions. Among other things, the record does not indicate whether there are jobs available in significant numbers in the national economy that Odgers could perform if all of his limitations were taken into account.

## C. The ALJ Harmfully Erred in His Evaluation of Liza Redding's Testimony

Ms. Redding, Odgers's treating mental health counselor, testified that Odgers had a number of limitations that would affect his ability to work. AR at 718-21. She opined that Odgers has severe limitations in his ability to understand and remember detailed instructions, and learn new tasks; and in nearly all categories of sustained concentration and persistence. AR at 718-19. She further opined that Odgers had a severe limitation in

his ability to maintain socially appropriate behavior and meet basic standards of cleanliness. *Id.* at 719, 721. Ms. Redding concluded that "[a]s far as I know, [Odgers] has never worked a 40 hour a week [sic] job with a boss, and I don't think he'd be able to." *Id.* at 721.

The ALJ gave little weight to Ms. Redding's opinions. *Id.* at 26. In doing so, he noted that she is not an acceptable medical source. *Id.*; *see* 20 C.F.R. § 416.902(a). The ALJ was accordingly free to disregard Ms. Redding's opinions to the extent they attempted to provide medical diagnoses. *See Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) ("[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make.") (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).

Ms. Redding did more than provide medical diagnoses, however, and the ALJ could not disregard her testimony without sufficient explanation. *See* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *4 (2006). In determining disability, "'an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout*, 454 F.3d at 1053). The ALJ must "give reasons germane to each witness," before he can reject such lay witness evidence. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations and quotation marks omitted). "Further, the reasons 'germane to each witness' must be specific." *Bruce*, 557 F.3d at 1115 (quoting *Stout*, 454 F.3d at 1054).

The ALJ gave four reasons for discrediting Ms. Redding's opinion: (1) her opinions were not consistent with her treatment records; (2) she misreported treating Odgers since April 2015 (she had in fact been treating him since April 2014); (3) she did not sufficiently consider how Odgers's alcohol and drug use affected his functioning; and (4) her treatment records suggested she was acting as an advocate for Odgers as much as she was opining as his therapist. AR at 26-27. None of these reasons are sufficiently germane.

The ALJ's first reason for discrediting Ms. Redding's opinion is not supported by substantial evidence in the record. The ALJ justified his position by noting that Odgers can "regularly attend appointments," "navigate social services to access assistance," "live independently," and "navigate public transportation." However, it is unclear how these basic tasks, which cannot be considered more than the bare minimum elements of Mr. Odgers's efforts to live a normal life, contradict Ms. Redding's testimony that Mr. Odgers is severely impaired in his ability to maintain appropriate social behavior and standards of cleanliness in a work environment. *Cf. Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1987) (noting that claimants need not "be utterly incapacitated to be eligible for benefits . . . many home activities are not easily transferable to what may be the more grueling environment of the workplace . . . ."). The fact that Odgers is able to use the bus (with tickets he receives from a social worker, *see, e.g.*, AR at 449) or regularly meet

with his mental health therapist does not conflict with Ms. Redding's opinion that Odgers would be unable to appropriately interact with co-workers. Moreover, the ALJ's statements regarding Odgers's ability to adequately maintain his hygiene are unsupported by the record, as discussed above. *See supra* Part VII.B.2.

The ALJ's second, third, and fourth reasons for rejecting Ms. Redding's opinions hardly warrant discussion. Ms. Redding's note that she began treatment in April 2015 was almost certainly a typographical error, as her treatment records indicate she began seeing Odgers in April 2014. AR at 444-47. This has no bearing on the validity of her opinions.

The ALJ's rejection of Ms. Redding's opinion due to her supposed failure to address the impact of Odgers's substance abuse is similarly unavailing. The ALJ noted that "there is no evidence the claimant is currently abusing substances," but then faulted Ms. Redding for failing to "sufficiently consider the claimant's alcohol and drug use when he was using, and how that may have affected his functioning." AR at 27. This is nothing more than speculation, as the ALJ points to no other evidence in the record suggesting that Odgers's claimed disability was due to his alcohol or drug use.[1] An ALJ may not rely on speculation to discount relevant evidence. *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (finding that the ALJ erred when she rejected medical

---

[1] The ALJ did note that Odgers inconsistently reported his alcohol and drug use, and found that this diminished Odgers's overall credibility. AR at 22-23. That is a separate issue from whether Odgers's substance use impacted his functioning, and cannot support the ALJ's decision to reject Ms. Redding's testimony.

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 14

test results on the basis that they "may have been distorted by [the claimant's] substance abuse" because the examining doctor never suggested any distortion and the ALJ noted there was "no evidence" that the claimant's mental impairments resulted from drug and alcohol use).

The ALJ's decision to reject Ms. Redding's testimony because she was acting as an advocate for Odgers is not supported by the record, and thus not germane. While it is true that an ALJ may consider a witness's relationship to the claimant in weighing testimony, *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006), the ALJ's determination must still be supported by substantial evidence in the record, *see Bayliss*, 427 F.3d at 1214 n.1. At most, the record shows that Ms. Redding, as Odgers's mental health therapist, made efforts to help Odgers find permanent housing as part of his overall treatment because he was living out of his truck at the time. *See* AR at 475, 481, 487, 493, 499, 505, 512. To assume she would then provide an inaccurate opinion so Odgers could unjustly obtain government benefits is speculative and legally invalid. *See Lester*, 81 F.3d at 832 (admonishing that the ALJ "'may not assume that doctors routinely lie in order to help their patients collect disability benefits'") (quoting *Ratto v. Secretary*, 839 F. Supp. 1415, 1426 (D. Or. 1993)). The ALJ did not identify any evidence of impropriety, nor has the Court located any in the record. The ALJ's rejection of Ms. Redding's testimony on this basis was thus not a germane reason supported by substantial evidence.

The Court finds the ALJ's rejection of Ms. Redding's opinions was harmful error. Whether there were valid reasons to discount some of Ms. Redding's testimony or not, the ALJ did not provide them, and the Court cannot substitute "*post hoc* rationalizations" for the ALJ's decision. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009). The Court is unable to conclude, based on the current record, that the ALJ would have reached the same disability determination had he properly assessed Ms. Redding's testimony, and therefore the ALJ harmfully erred.

**D.     The ALJ Harmfully Erred in His Evaluation of David Radomski's Testimony**

Mr. Radomski, the benefits case manager at the Aloha Inn, where Odgers lives, submitted a letter to the ALJ regarding his observations of Odgers. AR at 84. Mr. Radomski opined that it would be difficult for Odgers to maintain gainful employment because he "exhibited paranoid tendencies that have severely impaired his ability to maintain appropriate social relationships;" "his cognitive impairments limit his ability to interact with peers and authority figures in an appropriate manner;" and he is unable to "maintain socially appropriate personal hygiene." *Id.*

The ALJ gave little weight to Mr. Radomski's statements. As with Ms. Redding, there is no dispute that Mr. Radomski is not an acceptable medical source. *See* 20 C.F.R. § 416.902(a). The ALJ was therefore entitled to disregard Mr. Radomski's opinion regarding any medical diagnoses. *See Tobeler*, 749 F.3d at 833; *Nguyen*, 100 F.3d at 1467. But because Mr. Radomski's testimony did more than state medical diagnoses, the

ALJ was required to provide germane reasons for rejecting it. *See Tobeler*, 749 F.3d at 833-34.

The ALJ gave two reasons for discrediting Mr. Radomski's opinions. First, the ALJ noted that while Mr. Radomski referred to himself as Odgers's case manager, Odgers "testified Mr. Radomski is not his case manager, but sees him daily." AR at 26. This appears to be little more than a miscommunication in terminology. *Compare id.* at 50 (testimony from Odgers that Mr. Radomski was "a case services manager at Aloha Inn") *with id.* at 284 (letter from Mr. Radomski referring to himself as the "Benefits Case Manager" at Aloha Inn). It is also irrelevant as to whether Mr. Radomski provided accurate or useful lay testimony. As the ALJ noted, Mr. Radomski saw Odgers "daily;" his title is immaterial to the content of his testimony.

Second, the ALJ discredited Mr. Radomski's opinions because he "did not report about [Odgers's] ability to complete tasks at the Inn, but rather focused on his weaknesses." *Id.* at 26. The fact that Mr. Radomski did not address all things Odgers could do says nothing about the accuracy of his testimony on the things Odgers could not do. And if the ALJ felt more complete testimony was needed, it was his responsibility to obtain it and fully develop the record. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent 'duty to fully and fairly develop the record . . . .'") (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

Finally, the ALJ attempted to justify his treatment of Mr. Radomski's testimony by stating that "[Odgers's] residual functional capacity considers his cognitive and social limitations. The evidence is not persuasive that he has any greater limitations." AR at 26. But the residual functional capacity did not address Mr. Radomski's testimony that Odgers has difficulty interacting with authority figures and maintaining appropriate hygiene. The ALJ was required to give more than the conclusory statement that Mr. Radomski's testimony was "not persuasive." *See Hughes v. Comm'r of Soc. Sec. Admin.*, 403 F. App'x 218, 221 (9th Cir. 2010).

The Court finds the ALJ's rejection of Mr. Radomski's opinions was harmful error. The ALJ did not provide germane reasons for rejecting Mr. Radomski's opinions, and the Court cannot determine, based on the record before it, that the ALJ would have reached the same disability determination had he properly evaluated Mr. Radomski's opinions. The ALJ thus harmfully erred.

**E.     Remand for Further Proceedings**

Odgers asks the Court to remand this matter for payment of benefits or, in the alternative, for further proceedings. Op. Br. at 14. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d at 1290). But remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 808 F.3d 1041, 1044 (9th Cir. 2017). If additional

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS - 18

proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings. *McCartey*, 298 F.3d at 1076.

The appropriate remedy here is remand for further proceedings. The Court is not in a position to reweigh the evidence, nor can it conclude that the ALJ would be required to find Odgers disabled after properly evaluating the medical opinions and lay testimony. *See Leon*, 880 F.3d at 1046-48 (affirming the district court's decision to remand for further proceedings, rather than remand for payment of benefits, where the record reveals conflicts, ambiguities, or gaps).

On remand, the ALJ must reevaluate the opinions of Dr. Johnson, Ms. Redding, and Mr. Radomski, and conduct further proceedings as necessary to reevaluate the disability determination in light of these opinions.

## VIII.  ORDER

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 15th day of May, 2018.

BENJAMIN H. SETTLE  
United States District Judge